Mr. Cook, we're all smiling because you are the last case of the day and we're ahead of schedule. May it please the court, I'm Assistant Appellate Defender Brian Cook and I represent the defendant appellant Elijah Reid. This morning I would first like to address the three reasons that Mr. Reid should be granted the right to appeal his convictions, and then time permitting I'll address the two reasons that Mr. Reid should be granted a new trial. As your honors know, after Mr. Reid was found guilty of the murders of Jermaine Robinson and Ryan Ferry, he waived his right to appeal in exchange for the state dropping its pursuit of the death penalty. This agreement was invalid on its face, first and foremost, because appeal waivers violate Illinois public policy when made after trial solely in exchange for sentencing leniency. Unlike other rights that criminal defendants are allowed to waive, the appellate process does not just exist to protect individual defendants. The appellate process also exists to ensure that reviewing courts can divide, I'm sorry, can guide the development of the law and ensure that it is implied uniformly by the trial courts. And these public interests are threatened by appeal waivers such as the one made in this case. And they also provide prosecutors with a very powerful bargaining tool that can be used to insulate errors for review and thus threatening the fairness and legitimacy of the criminal justice system. Once a case has been tried, there's considerable disparity in bargaining power between the state and the defense that doesn't exist when you have a pretrial guilty plea and an appeal waiver as part of that sort of guilty plea. The defendant's bargaining power is very minimal at this point. The only right that he has to bargain with is his right to appeal. And the state's has increased considerably because now there's no uncertainty about the defendant being found guilty. And that's particularly true in a case where the defendant is facing the most severe penalty of death, as in this case. I would also point out that Illinois has a very pro-appeal public policy. We have a constitutional right to appeal unlike in federal law. We have rules that make it very simple for a defendant to perfect an appeal. And even if the defendant happens to fail to comply with those rules, there are a lot of exceptions to those rules to allow a defendant the right to appeal. So I would move on. Even if this court holds that appeal waivers are generally permissible and do not violate public policy, Mr. Reed's appeal waiver was nonetheless invalid because, first of all, it wasn't knowing and intelligent. Here, the trial judge had very brief and somewhat confusing admonishments to the defendant after this agreement was entered into very quickly after the guilty verdict. The judge never told the defendant what an appeal is. He never told the defendant what a post-conviction petition proceeding is and how that's different from an appeal. He never really explained what a federal habeas petition is either. Also, Mr. Reed, as part of this agreement, retained the right to seek clemency, but the judge never explained how clemency is different from an appeal or post-conviction proceeding. And that was really the precise confusion that Mr. Reed had when he filed a motion to withdraw this agreement. He said he didn't really understand the difference between clemency and appeal. He thought he did still have the right to go into court and challenge his conviction, even though that is the right that he gave up. How would you frame the appropriated admonishments, if they were to be given? They wouldn't have to be particularly lengthy. I think it would just be a matter of explaining to a defendant that on appeal, that's a chance for the defendant to raise any errors that might have occurred at trial or sentencing to try and get a new trial or reversal of his conviction. And those are errors that are based on the record from trial, whereas a post-conviction proceeding is a separate proceeding from the appeal where the defendant can raise issues challenging his conviction that are constitutional in nature and are based on things that didn't happen on the record. And then similarly, he could explain that a federal habeas petition is a way to raise any of those issues in a federal court after state proceedings have been completed. Clemency is also pretty simple to explain. The basic difference between clemency and appeal, post-conviction, etc., is that with clemency you're not going into court to challenge your conviction. You're asking the executive branch of Illinois to, in its discretion, either grant you a pardon or commute your sentence to some lesser sentence. So it really wouldn't have taken the judge that much more time. He just needed to provide a little more explanation of the nature of the rights that Mr. Reid was giving up. But we commonly don't see that when somebody just pleads guilty. The admonishments aren't necessarily detailed in terms of telling somebody exactly what they're giving up. I mean, they might say, you're giving up the right to confront witnesses, but they don't go into the detail. And that means you could try and impeach someone with evidence. And you're saying that in this circumstance they should go into more detail. Well, I think in some guilty plea waivers are also jury trial waivers. They do explain, by pleading guilty you're giving up your right to a jury trial, and they explain that a jury trial is where 12 citizens will be selected by the parties. They'll listen to the evidence and decide whether you're innocent or guilty. They might also explain what a bench trial is, that that's where the judge performs that role. There's more explanation than what was here. Here, basically all the judge did was state the very basic terms of the agreement and say, defendant, well, you understand that, right? Yes. There was no explanation of the content of that agreement. I'm not suggesting that there has to be a 15-minute treatise on what an appeal is and what a post-conviction proceeding is, but a little more than what happened in this case. Particularly when you have a defendant who is making this decision basically within less, not even hours after he's been found guilty. You know, often with guilty pleas and jury trial waivers, there's a lot of time before the actual waiver to sit at home or sit in your cell if you're in custody and think about what's happening and make sure you understand that. There's more time to discuss things with your attorney. Here this happened very quickly. And I think to the extent that Mr. Reed didn't understand that, I think it shows the time pressure is shown by the fact that he tried to get out of this agreement just within a few days of pleading guilty. I think that's indicative of how the time pressure affected his ability to understand the agreement. Within a few days of being found guilty. Right. The verdict and appeal waiver were, I believe, January 15th, and his pro se motion, I think, was filed on January 20th. So just a few days. How does the fact that there's a moratorium on the death penalty in Illinois factor into your argument about the unfair position of both sides? Well, I think the only really way that it factors in now is if the appeal waiver is invalid, it affects the remedy available to the parties. Because it's not just a moratorium at this point, it's abolition. I mean, the statute says, under no circumstances, no exceptions, judges shall not impose the death penalty. So at this point, if that weren't the case, the case could be remanded for a death sentencing hearing if the appeal were invalidated. There can't be a death sentencing hearing at this stage. So I think the remedy is just to grant the right to appeal. And I would also point out that Mr. Reed, he did seek to withdraw this agreement before the legislature abolished the death penalty. It's not like he's trying to get out of the agreement only now that he doesn't face that risk of execution. I'll move on to my third issue if you have no more questions about the first two. The bargain in this case was also invalid because it was based on illusory consideration. The state's bargaining chip here was giving them the right to seek the death penalty, but that is a right that the state should not have had in the first place because the state violated Rule 416C, which requires the state to file a notice of intent to seek the death penalty within 120 days of arraignment, which the state didn't do here. But it does have an exception. If the state has good cause for delay, then the state will be permitted to file a notice of intent. Here, well before that 120-day deadline passed, the police had spoken to all of the occurrence witnesses who testified at trial. The state had gathered almost all of its physical evidence at trial and had that tested, including the keys and the cell phone that were found in the car. The only remaining evidence that was still outstanding as far as testing would be the money that was found during a search of Reed's apartment and the cigarette that was found in the car. I don't believe the results of those two pieces of evidence, given that there was already plenty of other evidence that the state had and plenty of evidence for the state to be confident enough in its case to indict Mr. Reed with charges that carried a minimum sentence of life in prison. At this point, those two minor pieces of evidence just didn't have enough weight to justify the state delaying a decision like seeking the death penalty. Why do you think the DNA on the cigarette butt is mine? For the simple reason, at that point, the police had spoken to Terrell Aaron. Terrell Aaron told the police, inconsistent with his trial testimony, that he had seen Mr. Reed in Ryan Ferry's car on several occasions conducting drug transactions with Mr. Robinson. We also know that the car was awfully messy. It wasn't ever really cleaned out. So the cigarette at best shows that Reed was in the car at some point, but when there's evidence of a few other times that he was in the car, it doesn't provide very strong evidence that he was in the car at the time of the shooting. That's kind of why I refer to that evidence as equivocal or not particularly strong. So the state had violated the rule. The judge, however, permitted the state to seek the death penalty despite that violation of the rule because the judge essentially believed that when the state misses its deadline for providing notice, the case by default becomes a death penalty case. And I think that ruling was inconsistent with the plain language of the rule here. If a case defaulted into a death penalty case, there would have been no reason for the Supreme Court to have included paragraph C in the rule in the first place by requiring the state to provide notice. There also would have been no reason for the Supreme Court to say that in the rule, in no event shall the filing of a notice be after the 120-day deadline unless there is good cause shown. The judge's interpretation of the rule essentially renders those portions of the rule superfluous. And for that reason, we believe that that language, in no event shall the state file a notice after 120 days without good cause, that's a very clear indication. It's synonymous with saying the state should be precluded from seeking the death penalty if it does not provide a notice that complies with the rule. And for that reason, if the state shouldn't have been allowed to seek the death penalty, that renders its consideration for the appeal waiver illusory. And to that extent, the case is analogous to People v. Edgton, which was a very similar situation. The state, in exchange for a post-conviction waiver, offered to not seek the death penalty against the defendant, but because of some intervening case law, the state didn't have that right in the first place. The defendant wasn't eligible. Mr. Reed, under Rule 416, wasn't eligible for the death penalty, so the bargain was illusory. That violation of Rule 416c also leads to the first reason that Mr. Reed should be granted a new trial if this court holds the appeal waiver invalid. Because the judge permitted the state to seek the death penalty despite its violation of Rule 416c, the jury in this case was death-qualified. In other words, jurors who were strongly opposed to the death penalty were excluded. Jurors who were strongly supportive of the death penalty were also excluded. The ONS Supreme Court has held that when, because of an error of the judge, the jury is improperly faced with the question of deciding death, in that situation, the death qualification of the jury is errored. If the jury shouldn't be deciding whether the defendant should be executed, then the jury shouldn't be death-qualified either. The case on point here is Peeble v. Kidd. In Kidd, the defendant had a right under case law at the time of his trial to waive a sentencing jury and therefore preclude the death qualification of that jury. The judge, in violation of that right, refused to accept the defendant's sentencing waiver before trial and would then death-qualify the jury. And the Supreme Court, in a situation very similar to this one here, decided that that was a reversible error. I'll move on to the last issue briefly. Mr. Reed is also entitled to a new trial because his constitutional right to present evidence was violated when the judge ruled that a prior statement by the state's key witness, Carol Aaron, was not admissible as substantive evidence to show that Aaron, not Reed, was the shooter. The core of Reed's defense is that Mr. Aaron, the state's witness, was the shooter, but he wasn't able to present the most important piece of evidence to corroborate his own testimony to that effect. And that was Aaron's statement to his brother, Tanner Threat, in which Aaron admitted to knowing some details of the shooting, which led to the inference, contrary to his trial testimony, that he was present and was involved in the shooting. That statement was made just days after the crime. It was made to a close acquaintance. And under case law interpreting chambers, this issue, it really should have been left to the jury to decide what weight to give that statement as substantive evidence. But the jury denied that opportunity by the judge's ruling to the contrary. If Your Honor has no further questions about these issues to solve. Go ahead. Procedural question. If we should agree with you on one of the first two issues. Yes. And say, yes, your client should have a right to appeal. The second two issues, are that appeal? That's correct. Yes. Thank you. So for the reasons in the briefs and stated in the argument, we request reversal. Ms. DeMichel. May it please the court. Lord DeMichel on behalf of the people. The people's arguments are set up fully in our brief and we will rely on the points made in our brief, focusing only on a few points today. The people will focus on the substantive issues raised in defendant's brief. Because as noted in the people's brief, this court has a duty to avoid deciding constitutional issues where the outcome of the case will not be affected by the resolution of the constitutional issue. As framed by defendant, his appeal rights waiver issue involves a constitutional issue, but because his substantive issues are meritless, the outcome of the case is not affected by the resolution of the appeal rights waiver issues. First, the Rule 416 issue is entirely without merit. The people complied with Rule 416C by showing good cause as expressly permitted by the language of the rule. The people were seeking information to assist in analyzing aggravation and mitigation, information that would be relevant at the second stage sentencing hearing, not just the eligibility factors. And the people were also waiting on DNA test results. Notably, both the people and the defendant were waiting on these DNA test results. Defense counsel stated on the record that he was hoping the DNA comparisons would be favorable to defendant, and defense counsel also agreed on the record that the DNA testing was being completed as quickly as it could be completed. As that information was necessary for the state's attorney to make the legitimate and appropriate decision in deciding whether to seek or decline the death penalty, and that information was not available sooner, the trial judge properly found good cause had been shown. Furthermore, Rule 416C's directory does not specify any specific consequences for a violation. And here, where the capital case procedures were implemented from the very start of the case, there's absolutely no prejudice to defendant due to the notice being filed outside 120 days after arraignment. And the trial judge was within his discretion in allowing the people to seek the death penalty. Lastly on this issue, the death qualification of defendant's jury was not error, as the people were validly seeking the death penalty at the time of defendant's trial. Defendant's second substantive issue is also entirely without merit. At trial, defendant never even argued that the statement was admissible under Chambers, so he's forfeited that issue, and in any case, it's meritless. As Chambers provides the exception of the hearsay rule if the statement's against a declarant's interest and reliable, and here the statement is neither. The statement exculpates the declarant and inculpates defendant. According to the statement, the only reason Aaron knows any details is because someone else, namely defendant, told him the details. Threatt identified defendant as the shooter and said that Aaron had no personal knowledge and was not involved at all, that someone else told Aaron those details. Because the statement is not against Aaron's interest, Chambers doesn't apply, and that issue has no merit. Because the substantive issues are meritless, this court need not reach the appeal rights waiver issues. However, just very briefly, defendant validly waived his appeal rights. So procedurally, you're saying that if we reach these substantive issues and decide them in your favor, that we don't need to reach the first two issues, the procedural issues? That's correct, because defendant wouldn't be entitled to any relief even if his appeal rights were restored. What if he files a PCP later on down the line? Just on the off chance that might happen. What happens then? Do we have to face these procedural issues all over again? At that point, the people would contend that defendant validly waived his post-conviction rights as well, but any post-conviction relief at this point is entirely speculative. I'm just wondering, would we go through the same process then, reaching the merits first of the PCP, and then going backwards? Potentially, because post-conviction petition had no merit. It would be the same, we would decide things in the same order that you're asking us to do it now. They could be decided if the post-conviction petition had no merit. In which case, the waiver would be irrelevant altogether. Right. I guess that just leads me to the only question that I have. How can the waiver of the post-conviction rights be knowingly made, by definition, that the issue has to be something that's unknown at the time that they're sentenced, the time of their appeal. So at the outset, by definition, something you bring in the PCP is something that could not have been brought in an appeal. So I guess my concern is, how can you validly waive something that is not known to you? Well, the people would note that this court has upheld the waiver of post-conviction rights. In the Edgerton case, a defendant waived his post-conviction rights in exchange for the people not seeking the death penalty. So the courts have found that that is a purposeful waiver. And that was pre-trial, correct? No, that was actually after the direct appeal was over. The defendant waived his post-conviction rights. So it would be the same situation there, where he would have the same uncertainty about what he would be raising there. However, the court found it was valid. So are you waiving the procedural arguments and saying, go to the merits, or kind of a quasi-waiver, and saying, go to the merits, and if you agree with me on the merits, then you don't have to worry about those procedural issues. If you don't agree with me on the merits, then we have to go backwards. Well, the people are in no way waiving the appeal rights waiver arguments. We contend that the appeal rights waiver was valid, and there's basically two routes that this court could take to decide the issue either. The appeal rights waiver was valid, so we don't even need to consider the substantive issues, because the defendant can't raise them. Alternatively, because the waiver of an appeal right is a constitutional issue, this court need not look at that constitutional issue, because the substantive issues are meritless. So we're in no way waiving the validity of the appeal rights waiver, which we do contend was valid. If you think there was a valid waiver, why not file a motion to dismiss the appeal? Well, in essence, the people are left without a remedy anyway, because for the breach here, the people can't just go back and seek the death penalty, and the death penalty's been abolished. So under that posture, having to answer all the issues raised in this brief, and the substantive issues being so clearly meritless, and also with the instruction from White to not decide the constitutional issues where we don't need to, that was the reason for the structure of that. We can't reach the merits without deciding the constitutional issue. You're asking us to ignore that issue. We can't even get to the merits of the appeal. Oh, as an alternative, the people believe it's not necessary to get to the appeal rights waiver issues, because defendant's not entitled to relief, regardless of whether his appeal rights waiver was valid, because the issues that he raises don't have any merit. So the outcome's not affected either way. So under White, given that one of the issues is constitutional, the appeal rights waiver issue is constitutional, this court need not decide that issue. However, if this court disagreed, the appeal rights waiver was valid and could dismiss the appeal on that basis. You haven't asked us to dismiss the appeal. Have you? Maybe I didn't read the briefs correctly. We're asking you to rule in your favor on the merits. We're asking you to rule in our favor on the merits. However, alternatively, if this court were to decide the appeal rights waiver issues instead, then the dismissal would be appropriate. But because of the constitutional issue- Have you filed a motion to dismiss? No, the people have not filed a motion to dismiss. The people that asked this court for defendant's conviction and sentence, there are no further questions. Thank you. Thank you. Your Honors brought up the waiver of post-conviction rights. And the state mentioned that in Edgton, a waiver of post-conviction rights were upheld. The difference is that waiver came after the defendant had filed a post-conviction petition. So that defendant had time to think about what issues he might have in a PC petition, whereas when a defendant waives his right to post-conviction review right after trial, the defendant hasn't had that opportunity and wouldn't know what issues he might potentially raise on a PC review. I would also point out, in terms of the order in which this court decides the issues, all of the issues in this case are constitutional issues. The trial issues are also about the constitutional right to present evidence, the right to a jury trial, the right to due process. So even though reviewing courts are generally supposed to decide non-constitutional issues first and then decide constitutional issues, all the issues here are constitutional, so I think this court can address them in whatever order it deems proper. I also think, in the interest of judicial economy, given that all these issues are briefed and that the PC and appellate waivers are part of the same agreement, they rise and fall together, to avoid deciding that issue now when it could just pop up a second time on post-conviction review, I think would be less economical than deciding those issues at this point. So you don't disagree that we could and should, or at least can, decide those merits issues? Yes, absolutely. As appellant, we're not entitled to that. If you lose those, you're out of luck, and if you win them, maybe we have to go back and address them. Absolutely. Just a couple points on Rule 416. The state says that the rule is directory because there's no specific consequences in the rule. Case law provides an exception to that presumption, though, when there's negative language in the rule indicating that the act to be taken shall be done in no other time or manner. And here the rule has that sort of language. It says, in no event shall a notice be filed after 120 days without good cause. That defeats that presumption of the rules directory and proves instead that it is indeed mandatory. The state also points out that the Chambers issue is forfeited, but as we argued in our briefs, the evidence here was pretty close. It really came down to a credibility contest between Mr. Reed, who said Terrell Aaron was the shooter, and the state's occurrence witnesses, Terrell Aaron, Carter, McCrenge, and Mill Stewart, all of whom were impeached by prior and consistent statements, by their own criminal record, by their own potential involvement in this shooting. So it was a closely balanced case, and Mr. Reed was prejudiced by his inability to present that statement by Terrell Aaron as substantive evidence because it deprived him of evidence that would have corroborated his own testimony. So for those reasons and those in the briefs, we would ask that this court reverse Mr. Reed's convictions and rename his case for new trial. Thank you. Thank you. We'll be taking the matter under advisement and rendering a decision without undue delay, and we are in recess.